1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   In re VILLAGE CONCEPTS, INC.,              No.: 2:14-cv-00021-KJM-DAD

12               Debtor

13   DAVID FLEMMER, in his capacity as          ORDER
     Trustee for the Bankruptcy Estate of
14   Village Concepts, Inc.,

15               Plaintiff,

16        v.

17   ZENAIDA O. NEWELL a.k.a. ZANDEE
     NEWELL, MARIANNE NEWELL, and
18   BRIAN R. KATZ, in his capacity as
     Successor Trustee for the Harold O.
19   Newell Revocable Trust,

20               Defendants.

21

     BRIAN R. KATZ, in his capacity as
22   Successor Trustee for the Harold O.
     Newell Revocable Trust,
23
                 Counter-Claimant
24
          v.
25
     DAVID FLEMMER, in his capacity as
26   Chapter 7 Trustee for the Bankruptcy
     Estate of Village Concepts, Inc.,
27
                 Counter-Defendant.
28

                                        1

1   BRIAN R. KATZ, in his capacity as
    Successor Trustee for the Harold O.
2   Newell Revocable Trust,

3               Third Party Plaintiff/
                Cross-Claimant
4
                v.
5
    MARK WEINER, NANCY WEINER,
6   SUSANVILLE VILLAGE LLC, a
    California Limited Liability Company,
7
                Third Party Defendants.
8

9

10

11

12          This matter is before the court on the motion by defendants Brian R. Katz, Zandee

13   Newell and Marianne Newell for summary judgment, or, in the alternative, for partial summary

14   judgment.  (Mot. Summ. J., ECF No. 12.)  Plaintiff David Flemmer opposes the motion (Opp'n,

15   ECF No. 17), and defendants reply (Reply, ECF No. 18).  In their reply, defendants move to

16   strike Exhibit K and the related declaration attached to plaintiff's opposition, or in the alternative,

17   move for attorneys' fees for plaintiff's "failure to provide in their discovery responses" the

18   exhibit.  (*Id.* at 3–4.)  The court held a hearing on November 21, 2014, at which Luke Hendrix

19   appeared for plaintiff; Thomas Phinney appeared for defendants; and Michael Thomas appeared

20   for Mr. and Mrs. Weiner.  As explained below, the court DENIES in part and GRANTS in part

21   defendants' motion for summary judgment.  It DENIES defendants' motion to strike but allows

22   briefing on alternative sanctions for failure to previously disclose the information covered by the

23   motion to strike.

24   I.     BACKGROUND

25          On June 8, 2012, Debtor Village Concepts, Inc. ("Debtor" or "VCI"), a seller of

26   manufactured homes, filed a Chapter 11 petition, which was later converted into a Chapter 7 case.

27   (Order, ECF No. 5 at 2.)  Plaintiff was appointed trustee for the estate on May 15, 2013.  (*Id.*)

28

                                                2

Brian R. Katz is the successor trustee for the Harold O. Newell Revocable Trust,[1] and Zandee Newell and Marianne Newell are the beneficiaries under the Trust.  (ECF No. 12-2, Ex. 5.)  On July 10, 2013, plaintiff filed the operative first amended complaint, alleging three claims: (1) recovery of usurious interest payments under California Constitution Article XV, section 1; (2) avoidance and recovery of fraudulent transfer under 11 U.S.C. §§ 548(a)(1)(A) and 550; and (3) fraudulent transfer as to present creditors under California Civil Code section 3439.05 and 11 U.S.C. §§ 544(b) and 550.  (ECF No. 1 at 12.)  On September 30, 2013, defendants filed an answer and a counterclaim against plaintiff for the amounts allegedly owed to them under a 2010 agreement modifying a promissory note.  (*Id.* at 16.)  Defendants also filed a cross-claim against Mark and Nancy Weiner for breach of contract, based on the Weiners' personal guarantee to pay VCI's obligations.  (*Id.* at 24–25.)  On January 2, 2014, defendants moved to withdraw reference from the United States Bankruptcy Court for the Eastern District of California (*id.* at 1–5), and this court granted defendants' unopposed motion.  (*Id.* at 5; ECF No. 5.)  Thereafter, defendants filed the pending motion.

Before filing for bankruptcy, VCI was in the business of selling manufactured homes.  (ECF No. 12 at 6; ECF No. 17 at 5.)  Through 2004, VCI financed its purchase of manufactured homes through loans from various entities, including Bombardier Capital, Inc. ("Bombardier").  (ECF No. 17-3 ¶ 5.)  In 2004, because VCI needed new financing, its president, Mark Weiner, and the Newell Trust executed a promissory note for $550,000.  (ECF No. 12-2, Ex. 1.)  Plaintiffs allege they have made payments on this note equaling $688,264.64.  (ECF No. 1 at 14.)  As security for the promissory note, VCI granted the Newell Trust an interest in ten mobile homes, which until then had been part of Bombardier's inventory.  (ECF No. 17-3 ¶ 6; Ex. 2, ECF No. 1.)  In 2009, VCI and Harold Newell agreed that VCI would assign to Harold Newell a secured note it had with Matthew and Jamie Daggett ("Daggett Note"), whereby the Daggetts paid approximately $532 per month to VCI, to be applied to ten payments on the 2004 Note, amounting to $47,523.50.  (ECF No. 17-3 ¶¶ 26–27.)  In 2010, VCI and Brian Katz

---

[1] "The original settlor and trustee of the trust, Harold Newell, died in 2010 and Brian R. Katz became the successor trustee."  (ECF No. 12.)

1   modified the 2004 note.  (ECF No. 17-3 ¶ 12.)  According to the terms of the modified

2   agreement, the interest rate was to be reduced from 12 percent to 8 percent per annum.  (*Id.* ¶¶ 13,

3   23.)  The second promissory note at issue was executed in 2008, whereby Harold Newell made a

4   loan to VCI for $50,000, secured by a manufactured home.  (*Id.* ¶ 15.)  That note bore an interest

5   rate of 12 percent per annum.  (ECF No. 12-3, Ex. 14.)  Plaintiff now seeks to recover payments

6   VCI allegedly made on both notes.  (*See generally* ECF No. 1.)

7   II.      LEGAL STANDARD

8           A court will grant summary judgment "if . . . there is no genuine dispute as to any

9   material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

10   The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

11   resolved only by a finder of fact because they may reasonably be resolved in favor of either

12   party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[2]

13           The moving party bears the initial burden of showing the district court "that there

14   is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*,

15   477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish

16   that there is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio*

17   *Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular

18   parts of materials in the record . . . ; or show [] that the materials cited do not establish the

19   absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

20   evidence to support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586

21   ("[the nonmoving party] must do more than simply show that there is some metaphysical doubt as

22   to the material facts").  Moreover, "the requirement is that there be no *genuine* issue of *material*

23   fact . . . .  Only disputes over facts that might affect the outcome of the suit under the governing

24   law will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248

25   (emphasis in original).

26           _____

27           [2] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on
   cases decided before the amendment took effect, as "[t]he standard for granting summary
   judgment remains unchanged."  FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010

28   amendments.

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

A court may consider evidence as long as it is "admissible at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). "Admissibility at trial" depends not on the evidence's form, but on its content. *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing *Celotex Corp.*, 477 U.S. at 324). The party seeking admission of evidence "bears the burden of proof of admissibility." *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir. 2002). If the opposing party objects to the proposed evidence, the party seeking admission must direct the district court to "authenticating documents, deposition testimony bearing on attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in question could be deemed admissible . . . ." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86 (9th Cir. 2010). However, courts are sometimes "much more lenient" with the affidavits and documents of the party opposing summary judgment. *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240, 1243 (9th Cir. 1979).

III.   <u>MOTION TO STRIKE</u>

In their motion for summary judgment, defendants argue there is an absence of evidence to support plaintiff's allegation that VCI's payments on the 2004 note were $688,264.64; rather, plaintiff "has only identified payments totaling $236,393.23." (ECF No. 12 at 10.) Plaintiff counters by directing the court to Mark Weiner's declaration and the attached Exhibit K in support. (ECF No. 17 at 12; ECF No. 15, Ex. K.) Defendants, citing Rule 37(c), argue the court should strike Exhibit K because it was not provided to defendants during discovery. (ECF No. 18 at 3.) In the alternative, if the court does not grant their motion to strike, defendants request reasonable attorneys' fees for plaintiff's alleged failure to provide Exhibit K or the information in Mr. Weiner's declaration during discovery. (*Id.* at 3–4.)

During discovery, on June 27, 2014, defendants propounded an interrogatory, requesting plaintiffs "state all facts supporting the allegation . . . that the Debtor's payments on the $550,000 Note aggregated $688,264.64." (ECF No. 12-2, Ex. 7 at 33.)  They also requested plaintiff "identify all documents that support or evidence the facts stated" in response to the interrogatory. (*Id.*)  Defendants further requested production of "all documents supporting the allegation . . . that the Debtor's payments on the $550,000 Note aggregated $688,264.64." (*Id.* Ex. 7 at 35.)  Plaintiff responded on July 30, 2014, to these requests as follows:

> From the date of execution of the 550,000 Note through the date of execution of the modification, the Debtor paid to the Trust a number of monthly payments plus interest at the rate of 12% per annum.  Thereafter, the Debtor made payments to [Zenaida Newell], [Marianne Newell], and [Brian R. Katz], including payments in the aggregate amount of $236,393.23.

(*Id.* Ex. 10 at 76–77, 79.)  Plaintiff did not identify the number of monthly payments, Exhibit K or any of the information described now by Mr. Weiner in his declaration as support for the $688,264.64 alleged in the complaint. (*Id.* at 77).  Defendants contend plaintiff also did not produce responsive documents. (ECF No. 18 at 2–3 & n.3.)  At the hearing on the instant motions, plaintiff explained he did not possess Exhibit K and the information in Mr. Weiner's declaration at the time he responded to the interrogatories and document request, because Mr. Weiner had not provided the information to him.

Federal Rule of Civil Procedure 37(c)(1) precludes a party from relying in a later motion on information withheld in violation of Rule 26(a) or (e) unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).  Rule 26(a) governs initial disclosures and is not applicable here, because the information contained in Exhibit K, a compilation, was not subject to initial disclosures.  Rule 26(e) provides that if a party has responded to an interrogatory or request for production, the party must supplement or correct its response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e).

Here, defendants contend plaintiff did not timely amend his interrogatory response and document production to disclose Exhibit K and the information included in the Weiner declaration.  (ECF No. 18 at 3.)  Plaintiff has not provided any substantial justification for this failure.  But the information in Exhibit K is not so groundbreakingly new that defendants have been prevented from advancing their motion for summary judgment on the merits.  The omitted evidence is simply a more specific delineation of "monthly payments plus interest at the rate of 12% per annum" and how they came about.  (ECF No. 12-2, Ex. 10, at 76–77.)  Therefore, the omission is harmless.  The motion to strike will be denied.

Rule 37(c)(1) provides for alternative sanctions to exclusion: "In addition to or instead of this sanction, the court may, on motion and after giving an opportunity to be heard," order payment of reasonable expenses, including attorneys' fees, inform the jury of the party's failure, and may impose other sanctions described in Rule 37(b)(2)(A)(i)–(vi).  Fed. R. Civ. P. 37(c)(1)(A)–(C).  The court will allow the parties a chance to brief the issue of the type or amount of an appropriate alternative sanction.  Defendants may file a motion within twenty-one days of this order, with opposition and reply briefing filed as provided by the local rules.

IV.    EVIDENTIARY OBJECTIONS

Defendants object to certain paragraphs of Mr. Weiner's declaration.  (ECF No. 18-2 at 2.)  The court need not address those objections because it does not rely on any of the portions of Mr. Weiner's declaration to which defendants object.  Nor has the court cited or relied on any of the other evidence to which plaintiff objects.  (ECF No. 17-2.)  *Cf. Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (a district court must rule on evidentiary objections that are material to its ruling).

V.    MOTION FOR SUMMARY JUDGMENT

Defendants make the following arguments in support of summary judgment as to the usury claims:

> (1) [There is a] lack of evidence of alleged payments; (2) the transactions are exempt from usury because the financing was a replacement of exempt financing[;] . . . (3) the transactions constitute flooring financing exempt from usury under the time-price differential doctrine; (4) the alleged usurious "payments"

7

include transfers of property not money which must be excluded from any usury claim; (5) in 2010, the parties agreed to a replacement of the primary note with a new note bearing interest at 8% secured by a deed of trust, thereby taking the transaction outside of any usury; (6) the original note and guaranty by Mark Weiner contain usury savings clauses that apply in this case and are enforceable under California law; (7) the Debtor breached its mandatory obligation under the Security Agreement to maintain the Trust's collateral base of 10 mobile homes, and instead sold the mobile homes out of trust and kept the proceeds, as a result of which conversion and wrongful acts the Debtor and the Trustee are equitably barred from proceeding with this lawsuit.

(ECF No. 12 at 4–5.)

As to the fraudulent transfer claim, defendant argues "loan payments are, as a matter of law, not fraudulent transfers." (*Id.* at 5.)  At the hearing on the instant motions, plaintiff conceded the fraud related claims.  Accordingly, the court GRANTS defendants' motion for summary judgment as to plaintiff's second and third claims.

The court addresses only defendants' usury related arguments below.

A.     Brief General Legal Background

Simply stated, usury is the charging of interest on a loan in excess of the legally permitted maximum.  *O'Connor v. Televideo Sys., Inc.*, 218 Cal. App. 3d 709, 713 (1990) ("Usury is the exacting, taking or receiving of a greater rate than is allowed by law, for the use or loan of money." (internal quotation marks omitted)).  The California Constitution provides, in relevant part:

No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than the interest authorized by this section upon any loan or forbearance of any money, goods or things in action.

Cal. Const. art. 15, sec. 1.  "California's usury law imposes virtually strict liability on lenders." *In re Dominguez*, 995 F.2d 883, 886 (9th Cir. 1993).

The California Supreme Court has observed that "a transaction is rebuttably presumed *not* to be usurious," *Ghirardo v. Antonioli*, 8 Cal. 4th 791, 798 (1994) (emphasis in original), and "[t]he borrower bears the burden of proving the essential elements of a usurious transaction," *id.* at 799.  "To determine whether a transaction is usurious, [courts] must look to

1   the substance rather than the form of the transaction." *O'Connor*, 218 Cal. App. 3d at 713.  "The

2   pivotal question is whether or not the bargain of the parties, assessed in light of all the

3   circumstances and with a view to substance rather than form, has as its true object the hire of

4   money at an excessive rate of interest."  *Id.* at 713–14.  The essential elements of usury are:

5   (1) the transaction must constitute a loan or forbearance; (2) the interest charged must exceed the

6   statutory maximum; and (3) the lender must have a willful intent to enter into the transaction at

7   the set rate.  *Ghirardo*, 8 Cal. 4th at 798.

8           The first element requires that there be a lending or forbearance for the question of

9   usury to arise.  *Id.* at 799–802.  "A loan of money is a contract by which one delivers a sum of

10  money to another, and the latter agrees to return at a future time a sum equivalent to that which he

11  borrowed."  Cal. Civ. Code § 1912.  "A forbearance is an agreement to extend the time for

12  payment of the obligation due either before or after the obligation's due date."  *Sheehy v.*

13  *Franchise Tax Bd.*, 84 Cal. App. 4th 280, 283 (2000) (internal quotation marks omitted).

14          As to the second element, the interest rate must not exceed "[(1)] the higher of . . .

15  10 percent per annum or [(2)] 5 percent per annum plus the rate . . . established by the Federal

16  Reserve Bank of San Francisco . . . ."  Cal. Const. art. 15, section 1(2).  Finally, the intent element

17  merely requires "[t]he conscious and voluntary taking of more than the legal rate of interest . . .

18  and the only intent necessary on the part of the lender is to take the amount of interest which he

19  receives; if that amount is more than the law allows, the offense is complete."  *Ghirardo*, 8 Cal.

20  4th at 798 (internal quotation marks omitted).

21          To the extent exceptions to the general rules of usury apply in this case, they are

22  discussed below.

23      B.      Evidence of Payments

24          Defendants argue there is an absence of evidence to support plaintiff's allegation

25  that VCI's payments on the 2004 note were $688,264.64; rather, plaintiff "has only identified

26  payments totaling $236,393.23."   (ECF No. 12 at 10.)  Plaintiff counters by directing the court to

27  Mark Weiner's declaration and Exhibit K.  (ECF No. 17 at 12; ECF No. 15, Ex. K.)

28

1    Although a defendant may move for summary judgment by showing an absence of

2    essential evidence to support a plaintiff's case, *see* Fed. R. Civ. P. 56(c)(1)(B), the court finds

3    defendants' argument here unpersuasive.  Exhibit K, which the court considers in fact, sets forth

4    the payments made on the 2004 note and shows they amounted to $688,264.64.  (ECF No. 19-1,

5    Ex. K.)  The court DENIES defendants' motion to the extent it is based on the lack of evidence

6    argument.

7         C.    Replacement of Exempt Financing

8         In essence, defendants argue because the Trust replaced Bombardier, "a licensed

9    commercial financial corporation exempt from usury restrictions," as the lien holder, the

10   "transactions with the Trust remained exempt from usury to the same extent as enjoyed by

11   Bombardier."  (ECF No. 12 at 10–11.)  Plaintiff counters defendants have not produced evidence

12   of Bombardier's status as of 2004 to show it was exempt, and even if Bombardier was exempt,

13   the Trust did not step into Bombardier's shoes because the contract with the Trust was a separate

14   contract.  (ECF No. 17 at 13–14.)

15        The California Constitution exempts numerous classes of persons and entities from

16   application of its usury provisions, and also authorizes the Legislature to create other exemptions.

17   Cal. Const. art. 15, section 1.  It also provides that where a loan is exempt when initially made, a

18   successor of the lender is also covered by the exemption.  *Id.* (stating that the usury restrictions do

19   not apply to "any successor in interest to any loan or forbearance exempted under this article").

20        Here, the court finds defendants' argument unpersuasive.  In support of their

21   exemption argument, defendants cite to their Exhibit 20, which indicates that the same inventory

22   of homes was used as security for VCI's agreement with Bombardier as for VCI's agreement with

23   the Trust.  (ECF No. 12-4, Ex. 20 at 250.)  Other than that however, defendants point to no other

24   evidence showing the Trust stepped into the shoes of Bombardier, as, for example, a successor to

25   Bombardier's agreement with VCI.  Nor do defendants point to any evidence in the record to

26   prove the claimed exempt status of Bombardier.  Defendants do not explain how the inventory

27   fact alone supports their position.

28   /////

10

Plaintiff, on the other hand, has introduced sufficient evidence from which a reasonable jury could find VCI's agreement with the Trust was a separate agreement, independent of the agreement with Bombardier. Plaintiff points to Mark Weiner's declaration, where he states as follows:

> 22. There came a time during the first quarter of 2004 that I decided to find other financing for ten (10) of the new manufactured homes that were being floored by Bombardier out of an estimated 20 covered by their flooring loan. I needed to find new financing because these 10 homes had been floored for a couple of years and under the terms of the financing with Bombardier, various costs and penalties would be soon imposed by Bombardier that could force me to sell these particular homes at a substantial discount that I was not willing to offer to sell them that quickly.

> 23. In early April of 2004, I approached Harold Newell about a loan. The funds I needed for general business purposes and to floor some ten (10) of the Bombardier homes was approximately $500,000 to $600,000. While I knew that the interest rate with Harold Newell would be no less than 12%, the cost and penalties that would soon "kick in" with Bombardier could force me to sell these homes at substantial discounts instead of selling them in a more business-prudent manner.

> 24. The terms of the loan with Harold Newell and the terms of the loan with Bombardier were substantially different. I recall that the loan with Bombardier was at an interest rate less than 10%. The loan with Bombardier had a number of terms and conditions that were vastly different than the terms and conditions of the loan I had discussed with Harold Newell that for instance, allowed me to replace a sold home with another home of equal or greater value. The Bombardier loan did not provide this option.

> 25. After I secured the 2004 loan with Harold Newell as of April 26, 2004, I continued to finance new homes with Bombardier for several more years until all the remaining homes being floored with Bombardier had been sold.

(Weiner Decl. ¶¶ 22–25, ECF No. 17-1.)

Defendants have not met their burden to show there is no genuine dispute of material fact regarding whether the Newell Trust's transactions with VCI were exempt because the Newell Trust stepped into the shoes of an exempt entity. The court DENIES defendants' motion to the extent it is based on the exempt financing argument.

/////

/////

11

D.     The Time-Price Doctrine

Defendants argue the 2004 note with the Newell Trust was "exempt from usury restriction under the [t]ime-[p]rice [d]octrine because it was more in the nature of a consignment of mobile homes to the Debtor in exchange for an agreed portion of the sales price, and not a straight lender-creditor arrangement." (ECF No. 12 at 11.)  Plaintiff counters the time-price doctrine is inapplicable because the transactions at issue involved standard loan agreements, not agreements for property sold on credit.  (ECF No. 17 at 14.)  Defendants do not reply to plaintiff's counter-argument.

The arguments made here illustrate the California Supreme Court's observation, made two decades ago, that "the usury law is complex and riddled with so many exceptions that the law's application itself seems to be the exception rather than the rule." *Ghirardo*, 8 Cal. 4th at 807.  One of those many exceptions is the time-price doctrine.  *O'Connor*, 218 Cal. App. 3d at 714.  This doctrine applies where a seller agrees to sell property at one price for cash, and a greater price if the amount is to be paid over an extended period of time.  In essence, "the seller finances the purchase of property by extending payments over time."  *Id.*  "This type of transaction, often called a bona fide credit sale, is not subject to the usury law because it does not involve a loan or forbearance."  *Id.*  The California Supreme Court explained the exception as follows:

> On principle and authority, the owner of property, whether real or personal, has a perfect right to name the price on which he is willing to sell, and to refuse to accede to any other. He may offer to sell at a designated price for cash or at a much higher price on credit, and a credit sale will not constitute usury however great the difference between the two prices, unless the buying and selling was a mere pretense . . . .

*Verbeck v. Clymer*, 202 Cal. 557, 563 (1927).

The court finds defendants' argument here unpersuasive.  It is undisputed that "[o]n April 26, 2004, the Trust loaned VCI $550,000 and VCI executed a promissory note in favor of the Trust in the amount of $550,000.00 with a due date of April 6, 2005."  (ECF No. 17-3 ¶ 4.)  It is also undisputed that "VCI granted the Newell Trust a security interest in 10 mobile homes . . . ."  (*Id.* ¶ 6.)  Defendants have not met their burden to show the time-price doctrine

12

1  applies because they present no evidence disproving an essential element of plaintiff's claim, the

2  existence of a loan.  The court DENIES defendants' motion for summary judgment to the extent it

3  is based on the time-price doctrine.

4        E.       The Daggett Note

5        Defendants contend that "on at least one occasion, VCI transferred to the Trust a

6  promissory note in lieu of making payments" (ECF No. 12 at 13), and the amount of that note,

7  $47,523.50, should be excluded from the usurious payments because it falls into the "interest

8  contingency rule" exception, (*id.*).  Plaintiff counters the interest contingency rule is inapplicable

9  because "[r]eceiving payment on a secured third party promissory note [is] . . . just a different

10  source of payment."  (ECF No. 17 at 12–13.)

11        As noted above, the usury law is subject to numerous exceptions.  *See WRI*

12  *Opportunity Loans II LLC v. Cooper*, 154 Cal. App. 4th 525, 533 (2007).  "Because interest is

13  usurious only when it is absolutely repayable by the borrower, California courts have long

14  accepted a common law doctrine known as the 'interest contingency rule.'"  *Id.* at 534.  Under

15  this exception, "interest that exceeds the legal maximum is not usurious when its payment is

16  subject to a contingency so that the lender's profit is wholly or partially put in hazard, provided

17  the parties are contracting in good faith and without the intent to avoid the statute against usury."

18  *Id.* (internal quotation marks and citations omitted).  But "the hazard in question must be

19  something over and above the risk which exists with all loans . . . that the borrower will be unable

20  to pay."  *Id.*  "The interest contingency rule is subject to a principle which runs through all

21  transactions . . . [:] the courts will look to the substance rather than to the form and will condemn

22  disguised usury."  *Thomassen v. Carr*, 250 Cal. App. 2d 341, 347 (1967); *see also WRI*

23  *Opportunity Loans II LLC*, 154 Cal. App. 4th at 535.

24        It is undisputed that "[t]he Debtor had a promissory note pursuant to which obligor

25  'Daggett' paid approximately $532/month to the Debtor."  (ECF No. 17-3 ¶ 26.)  It is also

26  undisputed that VCI as the Debtor assigned the Daggett Note to the Trust in 2009 in lieu of

27  making 10 monthly payments of $47,523.35.  (ECF No. 12-2 at 48; ECF No. 12-4 at 214.)

28  /////

In his declaration, Mark Weiner states the following:

> In early June of 2009[,] I approached Harold Newell with a proposal in which I would assign him a secured note that I had with Matthew and Jamie Daggett that would be substantially discounted so that the note would be valued at $47,523.35 as it was applied to ten (10) payments on the 2004 loan. Harold Newell agreed to accept the assignment of the note under these terms and then applied the $47,523.35 to the 2004 note as we had agreed.

(Weiner Decl. ¶ 30 at 6, ECF No. 15.)

He further provides that,

> The "Daggett Note" carried an outstanding balance of approximately $66,000.00 when it was assigned to Harold Newell but was discounted so that it would produce at least a 12% rate of return. The note was secured by a home located in a mobilehome park located in Apple Valley, California . . . .

(*Id.* ¶ 31.)

At the hearing, the parties confirmed they did not dispute the amount of the Daggett Note and that Harold Newell accepted the Note.

As noted above, under the interest contingency exception, interest is usurious if a lender's profit is put in hazard above the usual risk of a borrower's inability to pay. *See WRI Opportunity Loans II LLC*, 154 Cal. App. 4th at 534. Here, VCI's assignment did not exceed the usual risk VCI would not be able to pay the loan because the risk did not change; rather the source of payment changed. And Harold Newell accepted the Daggett Note in lieu of the Debtor's ten payments. (ECF No. 15 at 27–28, Ex. I.) The court DENIES defendants' motion for summary judgment to the extent related to the Daggett Note.

    F.    <u>Sale Proceeds</u>

Defendants argue the sale proceeds from "the sale of two mobile homes that were the Trust's collateral . . . should also be excluded from the alleged usury claim under the time-price doctrine" because "[t]hey were not payments by the Debtor[.]" (ECF No. 12 at 14.) Plaintiffs counter those homes were VCI's property, which it could sell and replace with other homes under the security agreement. (ECF No. 17 at 12–13.) Defendants do not reply to plaintiff's counter-argument.

1    The court finds defendants' argument unpersuasive here as well.  As noted above,

2  the time-price doctrine applies "when property is sold on credit as an advance over the cash

3  price."  *Sw. Concrete Products v. Gosh Constr. Corp.*, 51 Cal. 3d 701, 705 (1990).  It is

4  undisputed that the title company "upon the sale of the two mobile homes that were the Trust's

5  collateral, issued checks to [the] Trust for $36,762 . . . and $38,003 . . . ."  (ECF No. 17-3 ¶ 28;

6  ECF No. 12-4 at 252–55, Ex. 21.)  Defendants do not explain, and it is unclear to the court, how

7  those transactions fall under the time-price doctrine, which applies where "the seller finances the

8  purchase of property by extending payments over time and charging a higher price for carrying

9  the financing."  *Sw. Concrete Products*, 51 Cal. 3d at 705.  The court DENIES defendants'

10  motion for summary judgment to the extent it is based on the sale proceeds argument.

11    G.    The 2010 Agreement

12    Defendants appear to argue that any payments VCI made after the 2010

13  agreement, which they characterize as a novation, should be excluded from the usury calculations

14  because the payments were made "on account of a new note with an 8% interest rate . . . ."  (ECF

15  No. 12 at 12–13.)  Plaintiff counters "because the original 2004 Note was usurious, the

16  transaction was usurious and remains usurious until purged by a new contract."  (ECF No. 17 at

17  16.)  Plaintiff says the 2010 agreement was a modification of the 2004 note because "a new note

18  was never executed"; thus, the initial taint was never purged.  (*Id.*)

19    "Novation is the substitution of a new obligation for an existing one."  Cal. Civ.

20  Code § 1530.  "Novation is made by contract, and is subject to all the rules concerning contracts

21  in general."  *Id.* § 1532.  "A novation thus amounts to a new contract which supplants the original

22  agreement and completely *extinguishes* the original obligation . . . ."  *Wells Fargo Bank v. Bank*

23  *of Am.*, 32 Cal. App. 4th 424, 431 (1995) (emphasis, alterations in original and internal quotation

24  marks omitted).  "It must clearly appear that the parties intended to extinguish rather than merely

25  modify the original agreement."  *Id.* at 432.  "The burden of proof is on the party asserting that a

26  novation has been consummated and the intention of the parties to extinguish the prior obligation

27  and to substitute a new agreement in its place must clearly appear."  *Davies Mach. Co. v. Pine*

28

*Mountain Club, Inc.*, 39 Cal. App. 3d 18, 24–25 (1974) (internal citation and quotation marks omitted).

On the other hand, "[a] modification or alteration, unlike a novation, does not terminate the pre-existing contract.  An executed oral modification of a term or provision of [a] contract does not wholly extinguish the contract; the effect is to alter only those portions of the written contract directly affected by the oral agreement leaving the remaining portions intact." *Id.* at 25 (internal quotation marks omitted).

In this case, the determination whether the 2010 agreement was a novation or a modification is important because if the agreement is a novation, then it is a new contract independent of the original usurious note.  On the other hand, if the 2010 agreement is a modification, then it may remain usurious assuming the original 2004 note was.  As the California Supreme Court has held:

> If a transaction is usurious in its inception, it remains usurious until purged by a new contract; and all future transactions connected with or growing out of the original are usurious and without valid consideration. An original taint of usury attaches to the whole family of consecutive obligations and securities growing out of the original vicious transaction; and none of the descendant obligations, however remote, can be free of the taint if the descent can be fairly traced.

*Westman v. Dye*, 214 Cal. 28, 38 (1931), *cited in Whittemore Homes, Inc. v. Fleishman*, 190 Cal. App. 2d 554, 560 (1961).

It is undisputed that on October 22, 2010, VCI and Brian Katz signed an agreement entitled "Modification of Note," which "modified" the 2004 note "in the following respects:

> 1.  The due date shall be extended to January 17, 2011. All other terms and conditions as set forth in [the 2004 Note] shall remain the same.
>
> 2.  On or before 01/17/2011, [VCI] shall pay $196,393.23 to the Newell Trust assigns as set forth below.
>
> 3.  On payment of the sum provided above in 2., the Note shall be replaced by a new note and 2nd deed of trust, secured by a mobile home park owned by Susanville Village, LLC . . . .  The new note shall be in the amount of $313,123.01 with interest

16

1

2

> accruing from 01/17/2011 at the rate of 8% per annum payable $5,000.00 or more per month, including principal and interest, beginning February 17, 2011, until paid in full."

3

(ECF No. 12-2 at 15, Ex. 4.)

4

It is undisputed that "the Debtor paid the Newells $196,393.23 in January 2011

5

and 8 monthly payments . . ." of $5,000 (ECF No. 17-3 ¶ 22; ECF No. 17-1 ¶ 34).  However,

6

VCI's Mark Weiner claims because he was unable to provide a second deed of trust as stated in

7

paragraph 3 of the 2010 agreement, he "never executed the new note on behalf of VCI" as

8

"contemplated in the 2010 modification."  (ECF No. 17-1 ¶ 34.)

9

The court finds defendants have not met their burden of showing that the above

10

payments should be excluded from the usury calculations, as they have not shown the 2010

11

agreement was a novation.  And that defendants cannot do because the language of the 2010

12

agreement is at least ambiguous on its face, as shown above.  While the agreement refers to

13

modification, it also states that the 2004 notes would be replaced by a new note.  (*See* ECF

14

No. 12-2 at 15, Ex. 4.)  *See Welles v. Turner Entm't Co.*, 503 F.3d 728, 737 (9th Cir. 2007)

15

(where contractual language is ambiguous (i.e., susceptible of at least two reasonable

16

interpretations) and the parties' intent is at issue, contract interpretation depends on the credibility

17

of extrinsic evidence, the weighing of which is a task for the jury).  Accordingly, the court

18

DENIES defendants' motion for summary judgment to the extent it is based on the 2010

19

agreement.

20

H.    Savings Clause

21

Defendant argues there is a savings clause in the 2004 note, which evinces the

22

parties' intent "that the Note as a whole not be usurious, and that interest accrue only at the legal

23

rate."  (ECF No. 12 at 12.)  In the alternative, even if the savings clause were to apply only after

24

default, because "the Note was plainly in default by 2009," any payments made after that date

25

should not be calculated in the usury calculations.  (*Id.*)  Plaintiff counters defendants' argument

26

is unsupported by law and the facts of this case.  (ECF No. 17 at 15.)

27

28

1            A lender's intent not to charge a rate beyond that permitted may be evidenced by a

2   contractual provision that provides the interest rate will not exceed the maximum permitted by

3   law. *In re Dominguez*, 995 F.2d at 886. Such a provision is referred to as a savings clause. If a

4   court finds that a savings clause evidences a lender's bona fide intent not to charge a rate that

5   exceeds the maximum permitted by law, the court may find the loan not to be usurious. *Id.* at

6   886–87.

7            The court finds defendants have not met their burden of showing there is no

8   genuine dispute of material fact that the savings clause in the 2004 note evinces the Trust's bona

9   fide intent not to charge a usurious interest. The 2004 promissory note provides, in relevant part,

10   as follows:

> In the event of any default . . . in the payment of principal or
> interest . . . , the unpaid balance of the principal sum of this
> promissory note shall at the option of the holder become
> immediately due and payable and the amount then due shall accrue
> interest until payment at the rate of twelve percent (12%) per
> annum or the highest rate permitted by law, whichever is less.

15   (ECF No. 12-2 at 4, Ex. 1.) Defendants argue this provision conveys the parties' intent "that the

16   Note as a whole not be usurious . . . ." (ECF No. 12 at 12.) But according to the plain terms of

17   the savings clause, it only applies "in the event of [a] default." (ECF No. 12-2 at 4, Ex. 1.)

18            In *In re Dominguez*, the savings clause at issue provided as follows:

> In the event Borrower pays any interest on the . . . Promissory
> Notes . . . and it is determined that such rate[] . . . [was] in excess of
> the then legal maximum rate, then that portion of the interest
> payment representing an amount in excess of the then legal
> maximum rates shall be deemed a payment of principal and applied
> against the principal of the . . . Note.

23   995 F.2d at 885. The Ninth Circuit held: "The clause is clearly written to override the regular

24   interest provision if that provision would result in a usurious rate." *Id.* at 887. Unlike the savings

25   clause in *In re Dominguez*, the clause in this case is not clearly written to override the regular

26   interest provision because it applies only in the event of a default. If VCI were current on its

27   payments, then this provision would not apply, and the interest rate specified in the note would

28   /////

1    govern.  Hence, the savings clause in this case does not unconditionally operate "to limit the

2    interest rate to the maximum non-usurious rate."  *Id.*

3            As to defendants' argument that the 2004 note was in default by 2009, there is a

4    genuine dispute of material fact.  (*See* ECF No. 17-3 ¶ 11.)

5            The court DENIES defendants' motion for summary judgment to the extent it is

6    based on the savings clause argument.

7        I.    Unclean Hands

8            Defendant argues VCI secretly sold the mobile homes that served as collateral for

9    the 2004 note and deposited the proceeds in VCI's own account, instead of paying the Trust.

10   (ECF No. 12 at 14–16.)  Defendants reason VCI's suit is barred by the unclean hands doctrine.

11   (*Id.*)  Plaintiff counters defendants provide no evidence in support of their contention.  (ECF

12   No. 17 at 16.)

13           The doctrine of unclean hands provides an affirmative defense, "prevent[ing] a

14   party from obtaining either legal or equitable relief when that party has acted inequitably or with

15   bad faith relative to the matter for which relief is sought."  *People v. Wickham*, 222 Cal. App. 4th

16   232, 238 (2013); *Mag Instrument, Inc. v. JS Products, Inc.*, 595 F. Supp. 2d 1102, 1110 (C.D.

17   Cal. 2008).  Defendants have the burden of showing there is no dispute of material fact as to each

18   element of the defense.  *See S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir.

19   2003).  Defendants have not pointed the court to evidence in the record eliminating a dispute as to

20   VCI's misappropriation of the Trust's collateral and proceeds.  The court DENIES defendants'

21   summary judgment motion to the extent it is based on the unclean hands argument.

22       J.    The 2008 Note

23           Defendants appear to make two main arguments regarding the 2008 Note:

24   (1) under the interest contingency exception, a $5,000 credit should not be characterized as a

25   usury payment; and (2) the $50,000 Note is exempt from usury laws because it was entered into

26   by "sophisticated parties engaged in a commercial transaction."  (ECF No. 12 at 15.)

27           As to the first argument, plaintiffs counter defendants "provide no evidence to

28   support their contention that a $5,000 credit . . . was taken by VCI on account of the Daggett

19

Note." (ECF No. 17 at 17.) "Even if a credit was taken, as noted above, Harold Newell agreed to the assignment and the assignment is a loan payment because it did not change the nature of the risk that the Newell Trust bore—the Newell Trust was already subject to the risk that VCI may be unable to pay." (*Id.*) As to defendants' second argument, plaintiff responds defendants do not establish that "VCI was a sophisticated party engaged in a commercial transaction as defined under the applicable statute. Most importantly, the 2008 Note was guaranteed by Mark and Nancy Weiner, which prevents the claimed usury exemption." (*Id.*)

The California Legislature has created a broad class of exempt transactions involving loans made to or guaranteed by financially large or sophisticated business entities. Cal. Corp. Code § 25118. However, this section does not apply where the guarantor is an individual. *Id.* § 25118(e)(1).

Here, as well, defendants' arguments are unavailing. As to the first argument, the interest-contingency exception is inapplicable for the same reasons as set forth above in the court's analysis concerning the Daggett Note. As to the second argument, the Weiner's personal guarantee would prevent the exemption applicable to sophisticated parties. (*See* ECF No. 12-2 at 11, Ex. 3.) Specifically, it is undisputed that in 2008, the Newell Trust loaned VCI $50,000, secured by a mobile home. (ECF No. 17-3 ¶ 15.) It is further undisputed that in 2004, the Weiners executed a personal guarantee whereby they "absolutely and unconditionally guarantee[d] the full and prompt payment when due, . . . of all debts, covenants, liabilities and obligations of [VCI] to Harold Newell, Trustee . . . ." (ECF No. 19-1, Ex. A.) This personal guarantee could be interpreted as a continuing guarantee, especially in light of Mr. Weiner's statement that he and his wife "agreed to guarantee . . . all future loans made by Harold Newell to VCI" with the 2004 guarantee note. (ECF No. 17-1 ¶ 27.) If it is found to be a continuing guarantee by the Weiners as individuals, the sophisticated business exemptions would not apply. Viewing the evidence in the light most favorable to the nonmoving party, as required, the court DENIES defendants' motion for summary judgment as to the 2008 promissory note.

/////

/////

1    VI.     <u>CONCLUSION</u>

2            For the foregoing reasons, the court orders as follows:

3            1.      Defendants' Motion for Summary Judgment is DENIED as to plaintiff's

4 first claim.

5            2.      Defendants' Motion for Summary Judgment is GRANTED as to plaintiff's

6 second and third claims.

7            3.      Defendants' Motion to Strike is DENIED.  Defendants may file a motion

8 for sanctions as provided above, within twenty-one days.

9            IT IS SO ORDERED.

10 DATED: March 17, 2015.

11

12                                              _____

13                                    UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28